**UNITED STATES of America, Appellee,**

v.

**Selwyn CHAVIS, a/k/a "Selwyn Raymond Chavis," a/k/a "John Doe," a/k/a "Win," Defendant-Appellant.**

No. 1344, Docket 82–1349.

United States Court of Appeals, Second Circuit.

Argued June 7, 1983.

Decided Oct. 14, 1983.

Richard E. Rieder, Essex, Conn., for defendant-appellant.

Peter B. Sobol, Asst. U.S. Atty., S. D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y.,* Warren Neil Eggleston, Walter P. Loughlin, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for appellee.

Before OAKES and MESKILL, Circuit Judges, and HILL,** District Judge.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Motley, *C.J.*, following a three day jury trial convicting defendant of conspiracy to distribute heroin and to possess heroin with intent to distribute it in violation of 21 U.S.C. §§ 841, 846. Defendant was sentenced to two years imprisonment. On appeal Chavis claims that his conviction must be reversed because it was not based upon a unanimous verdict as

required by Fed.R.Crim.P. 31(a). We agree and reverse and remand for a new trial.

After the jury deliberated for a total of five hours and twenty minutes, interrupted by requests for a re-reading of certain portions of testimony and the charge, the jury sent the following note to Chief Judge Motley:

> Your Honor, we have one juror who is in disagreement with the eleven other jurors. He says he had made his mind up and will not change it.

The following colloquy then occurred:

> MR. JACOBS (Defense Counsel): . . . I have discussed with the government the possibility of taking a verdict of eleven. My client has agreed.
>
> MR. SOBOL (Ass't U.S. Atty.): One moment, your Honor.
>
> THE COURT: Is there going to be some decision by the government on this suggestion?
>
> MR. SOBOL: We will accept it, your Honor.
>
> THE COURT: An 11-man verdict?
>
> MR. SOBOL: Yes.
>
> THE COURT: You say the defendant accepts it?
>
> MR. JACOBS: Mr. Chavis, I have explained to you that if you insist the verdict must be unanimous and you told me you are willing to accept a verdict from 11 of the 12 jurors.
>
> THE DEFENDANT: Yes, I will take it.
>
> THE COURT: The government wants to take it? The government accepts?
>
> MR. SOBOL: Yes, the government accepts, your Honor.
>
> THE COURT: All right, bring in the jurors.

Tr. at 317–38, Supp.App. at 51–52.

The jury returned to the courtroom and the foreman announced that the verdict of the 11 jurors was guilty. Prior to polling the jury, the identity of the holdout juror was unknown. When polled, all jurors ex-

---

* Mr. Martin is no longer United States Attorney for the Southern District of New York.

** Honorable Irving Hill, United States District Judge for the Central District of California, sitting by designation.

cept juror number 12 stated that their verdict was guilty. The verdict was accepted by the court and the jury was excused.

In *United States v. Vega,* 447 F.2d 698 (2d Cir.1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972), this Court held that a federal criminal defendant could waive his right to be tried by a twelve-person jury. In that case the trial judge had received a note from a juryman stating that he was the "primary holdout" preventing the return of a verdict. After obtaining the consent of both the defendant and the prosecution, the district court dismissed the juror and the defendant was convicted by an eleven-person jury. On appeal, Vega's conviction was affirmed on the ground that he had waived his right to a twelve-person · jury.

Distinguishing *Vega* in *United States v. Pachay,* 711 F.2d 488 (2d Cir.1983), this Court held that Fed.R.Crim.P. 31(a) "does not permit waiver of the unanimity requirement, a conclusion reached by the three other circuits that have confronted the issue." 711 F.2d at 491. That holding was qualified somewhat by note 4, 711 F.2d at 493 n. 4, which says:

... violation of the Rule's [Fed.R.Crim.P. 31(a)] prohibition of waiver requires reversal, at least in a case like this, where the waiver was suggested by the District Judge.

We need not consider whether a waiver obtained in violation of a rule prohibiting waiver can ever be given effect, as, for example, if the idea of accepting a non-unanimous verdict originated with a defendant.

In the instant case it was clear that it was defense counsel who introduced the idea of accepting a non-unanimous verdict. This case, like *Pachay,* involves a purported waiver of a unanimous verdict, but unlike *Pachay,* the idea of waiver here was introduced by defense counsel rather than by the trial judge.

We need not answer the question left open by *Pachay's* note 4, 711 F.2d at 493 n. 4, whether a waiver obtained in violation of Fed.R.Crim.P. 31(a), which provides that a jury verdict must be unanimous, can ever be given effect. Before we could conclude that such an important right had been waived, we would have to be satisfied that the trial judge had made a searching inquiry to insure that the defendant was fully aware of his right to a unanimous verdict and that he had given up that right of his own free will and not as a result of a misunderstanding, or a promise, threat or someone's suggestion. Even though the discussion of waiver in this case was initiated by Chavis' counsel, we are not satisfied that Chavis made an intelligent and voluntary waiver of his right to a unanimous verdict and, consequently, a retrial is required.

Reversed and remanded for a new trial.

OAKES, Circuit Judge (concurring):

The question presented by this appeal is whether a defendant in a federal criminal trial can waive his right to a unanimous jury verdict. This very term, a panel of this circuit considered and resolved this issue, holding in *United States v. Pachay,* 711 F.2d 488, 491 (2d Cir.1983), that Rule 31 "does not permit waiver of the unanimity requirement, a conclusion reached by the three other circuits that have confronted the issue." Because the holding in *Pachay* is not only clear and correct, but also controlling on the facts on the record before us, my concurrence today is in the result only. I write only to emphasize that *Pachay* states good law, and to explain why I believe that the majority's use of note 4 to *Pachay* contradicts not only the letter, but also the logic of that case.

Early drafts of Rule 31 expressly permitted the parties to a criminal trial to accept a verdict of a majority of the jurors. *See Pachay,* 711 F.2d at 490. The provision was, however, ultimately deleted, after the drafters received numerous comments opposing it. *Id.*

As Judge Newman observed in *Pachay,* one of the more powerful and persuasive arguments opposing waiver was made by Judge Merrill Otis of the Western District of Missouri, who stressed that "the *character* of the tribunal by which a man may be

imprisoned and *how the tribunal functions* are things so fundamental that they should be determined by law and should be the same *for all men.*" 1 Comments, Recommendations and Suggestions Received Concerning the Preliminary Draft of the Federal Rules of Criminal Procedure 139 (Sept. 25, 1943) (on file in the Harvard Law School Library), cited at 711 F.2d at 491 n. 1. Additionally, Judge Otis expressed concern that a criminal defendant might feel coerced to agree to a judge's suggestion of a non-unanimous verdict, apparently fearing that a defendant who refused to consent might incur the "displeasure," if not the wrath and retribution, of the judge. 711 F.2d at 490–91.

Thus the drafters of Rule 31 were convinced that a defendant should not be allowed to waive the requirement of a unanimous verdict. Every circuit which has considered the question—and it is worth noting that the legislative history was not examined closely by any panel prior to *Pachay* —has been similarly and independently convinced. Thus, I am somewhat surprised that the majority here leaps at the opportunity to deny the force of *Pachay* by pointing to note 4 and suggesting that it may be significant that the possibility of waiver in this case was first raised by Chavis's appointed counsel—a "fact" which is, to my mind, unsupported by the record.[1] But moving beyond a factual dispute, I believe the majority's approach does an injustice to Rule 31, to *Pachay,* and even to note 4 itself.

At the outset, note 4 at most leaves open the question whether a waiver of Rule 31 may "ever" be given effect, "as, for example, if the idea of accepting a non-unanimous verdict originated with a defendant." Assuming, for argument, that the question really is "open," this possibility of a narrow exception must be read in light of the emphatic language of *Pachay* that Rule 31 "prohibits waiver," 711 F.2d at 492.

Thus, I would assume that the *Pachay* panel meant what it said, *i.e.,* that if the *defendant* himself (as opposed to his counsel) originates the idea of accepting the non-unanimous verdict, the effect to be given the resulting waiver may be an open question. The distinction between defendant and defendant's counsel, while sometimes of no consequence, would clearly be of the utmost significance in the area of waiver. For all the reliance we, as a society, place on legal representation, counsel may not waive, on behalf of his client, his right to a trial, for example, or his right to a jury trial.

There is an even more fundamental reason which compels me to reject the majority's apparent attempt to breathe life into note 4. A "waiver," as defined by *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), is "ordinarily an intentional relinquishment or abandonment of a known right or privilege." As such, it is possible that there might be some case where the proposal to dispense with the requirement of unanimity would actually originate with a defendant, who presumably does not have the court room know-how that would tell him that the chances are strong that a criminal jury divided 11 to 1 has 11 people voting to convict and only one to acquit. But the rule of *Pachay* is that waivers are not permitted. To even suggest, as I fear the majority seems to, that despite the "no waiver rule" waivers which originate with the accused may be given effect, without more, is to allow for the possibility that the "no waiver rule" will become the waiver rule. This is hardly consistent with *Pachay.*

By definition, an anti-waiver rule represents a determination by a third party— here, the drafters of Rule 31—that the unanimity requirement is so basic or fundamental to the right of trial by jury that a defendant may not be trusted to choose for himself to discard it. It is, therefore, clear-

---

1. Seeking to place the present case within note 4, the Government claims and the majority appears to accept that it was Chavis who initiated the proposal of taking a verdict of eleven, and refers us to the portion of the transcript quoted in the majority opinion at page 47. I totally disagree with the contention that the quoted exchange demonstrates that Chavis originated the idea of accepting a nonunanimous verdict. All it shows is that counsel "discussed" the matter with the Government and that his client "agreed" to "take it."

ly turning the rule on its head to allow the very defendant who would choose to discard it—who is, therefore, the intended beneficiary of the rule and who most needs the protection of the rule—to shed himself of its protection.

What then does *Pachay's* note 4 mean? Is it a meaningless gesture of conciliation to a dissent? My own view is that we should, here and now, answer the question left open in *Pachay* and declare that Rule 31 allows for *no* waiver of unanimity. Short of that, I would suggest that, at most, an exception to the no-waiver rule might be made only in those rare cases where it is crystal clear that a defendant himself has not only originated the idea of a waiver, but insisted upon it, after having been carefully advised by the trial court of the unanimous verdict policy behind Rule 31.

The majority holds that as a matter of law there was no waiver; if I were confronted with that question, I would want to know more facts than I do. But of course on the basis of *Pachay* I feel that I am not so confronted, and do, therefore, concur in the result reached by the majority.