597 So.2d 864 (1992)
Deric FLANNING, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-1698.
District Court of Appeal of Florida, Third District.
April 7, 1992.
Rehearing Denied May 12, 1992.
*865 Bennett H. Brummer, Public Defender, and Carol J.Y. Wilson, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Jacqueline M. Valdespino, Asst. Atty. Gen., for appellee.
Before HUBBART, FERGUSON and GODERICH, JJ.
HUBBART, Judge.
The central question presented for review is whether a defendant in a criminal case may, with the consent of the state, waive his/her right to a unanimous six-person jury verdict and accept a 5-1 majority verdict. We hold that a defendant may validly waive this right and agree to such a verdict, but only when the following requirements are met: (1) the waiver is initiated by the defendant, not the trial judge or the prosecutor; (2) the jury has informed the court that it is unable to reach a verdict, after having had a reasonable time to deliberate; (3) the trial judge explains to the defendant his/her right to a unanimous jury verdict and the consequences of a waiver of that right; and (4) the trial judge questions the defendant directly and determines that the waiver is being made knowingly and voluntarily. Because the third and fourth requirements, as stated above, were not met in this case, we conclude that the defendant's waiver of a unanimous jury verdict below was invalid, and, accordingly, reverse for a new trial.

I
The defendant Deric Flanning was charged by information below with robbery with a firearm, § 812.13(2)(a), Fla. Stat. (1989), entered a plea of not guilty, and was tried by a six-person jury. At the close of all the evidence, the trial court, upon a defense motion for judgment of acquittal, reduced the charge to robbery with a non-deadly weapon. § 812.13(2)(b), Fla. Stat. (1989).
The jury retired at 2:45 p.m. and deliberated for four hours without being able to reach a verdict. During this time, the jury sent out two written questions, which the trial judge answered. At 5:43 p.m., the jury sent out a written note stating "We are going to be a long time." Upon receipt of this note, defense counsel asked the trial judge to determine whether the jury was split 5-1 as the prosecuting attorney surmised it was, and if so, defense counsel stated that "I would discuss with my client the possibility of stipulating to a five person verdict if they [the state] were willing to stipulate to it." The trial judge was, at that point, negative to the idea and did not make the requested inquiry of the jury. Instead, the trial judge, without objection, sent the jurors home with an admonition not to discuss the case with anyone and to *866 return to court at 8:50 a.m. the next day to resume deliberations.
The next morning, the jury resumed deliberations as instructed. At 10:30 a.m., the trial court ordered the jury returned to the courtroom and inquired how the jury was split; the jurors responded 5-1, following which the trial court gave the jury an Allen charge. After the jury retired, the trial judge asked defense counsel about the possibility of accepting a 5-1 majority verdict, as counsel had previously suggested. Defense counsel agreed to discuss the matter with the defendant; the prosecuting attorney at that point expressly consented on the record to accepting the 5-1 majority verdict.
Approximately forty-five minutes later, the jury sent out a note stating, "We still cannot agree," following which the trial judge inquired what the defendant's position was. Defense counsel responded, after conferring with the defendant, "Your honor, he's decided to accept a non-unanimous verdict of five to one." The trial judge then had the defendant sworn and directly addressed him in a brief colloquy ostensibly designed to determine whether the defendant understood what he was doing.[1] The trial judge then ordered the jury returned to the courtroom, accepted a 5-1 majority verdict of guilty of robbery with a non-deadly weapon after polling the jury to verify the verdict, and discharged the jury. The defendant was subsequently adjudged guilty in accord with the jury verdict and was sentenced to thirty-years imprisonment as an habitual offender. This appeal by the defendant follows.

II
It is settled that a defendant has a federal constitutional right under the Sixth and Fourteenth Amendments to a unanimous jury verdict when charged with a non-petty criminal offense where the jury, as here, is composed of six members. Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). Although Florida's constitutional guarantee of a jury trial [Art. I, §§ 16, 22, Fla. Const.] has never been interpreted to require a unanimous jury verdict, it has long been the legal practice of this state to require such unanimity in all criminal jury trials; Fla. R.Crim.P. 3.440 memorializes this longstanding practice: "[n]o [jury] verdict may be rendered unless all of the trial jurors concur in it." No statute or rule of procedure in Florida has ever expressly abolished this unanimity requirement for any *867 criminal jury trial in this state. See In re Florida Rules of Criminal Procedure, 272 So.2d 65, 66-69 (Fla. 1972) (Roberts, J., dissenting). It is therefore settled that "[i]n this state, the verdict of the jury must be unanimous" and that any interference with this right denies the defendant a fair trial. Jones v. State, 92 So.2d 261 (Fla. 1956).
Contrary to the defendant's argument, however, we think the right to a unanimous jury verdict may be validly waived by the defendant under certain circumstances. Indeed, it is well settled that the entire right to a jury trial may be validly waived by the defendant under certain circumstances. Indeed, it is well settled that the entire right to a jury trial may be validly waived by the defendant in a criminal case;[2] also an aspect of this right may be validly waived by the defendant, namely, the right to be tried by a 12-person jury in a capital case.[3] We see no reason, then, why the defendant is constitutionally prohibited from waiving another aspect of this right  namely, the right to a unanimous jury verdict. It is therefore not surprising that, although there are some contrary federal cases,[4] the weight of authority in the country appears to recognize the validity of such a waiver, or at least, the better reasoned cases do.[5]
We recognize, however, that a jury unanimity waiver is fraught with some danger and that accordingly such waiver may only be recognized under limited circumstances. In particular, there is the danger that a defendant might feel pressured by the trial judge or prosecutor into accepting a majority jury verdict so as to save the state the time and expense of a second trial  or face a heavier sentence if eventually convicted should he/she refuse to waive the unanimity requirement. We therefore agree with the Eleventh Circuit Court of Appeals' resolution of this issue in Sanchez v. United States, 782 F.2d 928 (11th Cir.1986):
"The principal concern of opponents of a waiver provision is the potential for coercion by judges and prosecutors who would propose the waiver to the defendant and then be in a position to recommend or impose a harsh sentence upon a defendant who refuses. See, United States v. Pachay, 711 F.2d 488, 493 (2d Cir.1983); Hibdon v. United States, 204 F.2d 834, 839 (6th Cir.1953). Such an argument is persuasive for finding that a defendant cannot waive the right where the suggestion comes from the Government or the judge, but does not follow when requested by the defendant himself.
... .
Clearly there is a constitutional right to a unanimous verdict, but in exceptional circumstances the defendant should be allowed to waive that right. It is hard to imagine a situation in which a defendant would want to accept a non-unanimous verdict rather than have a mistrial declared, but there could be a case again where the defendant anticipates a favorable outcome ultimately if a nonunanimous verdict is accepted, and in those circumstances the defendant should be allowed to do so. Before allowing the defendant to waive the right, the following *868 criteria should be met: (1) the waiver should be initiated by the defendant, not the judge or prosecutor; (2) the jury must have had a reasonable time to deliberate and should have told the court only that it could not reach a decision, but not how it stood numerically; (3) the judge should carefully explain to the defendant the right to a unanimous verdict and the consequences of a waiver of that right; and (4) the judge should question the defendant directly to determine whether the waiver is being made knowingly and voluntarily."
782 F.2d at 932, 934.
Beyond the Sanchez requirements which we hereby adopt, we have considerable doubt whether the right to a unanimous jury verdict could be validly waived by a defendant so as to accept a plurality verdict, especially as to a six-person jury; this is so because the resultant plurality verdict may not legally constitute the verdict of a jury at all. Moreover, a similar waiver to accept a bare 4-2 [or 7-5] majority verdict may arguably be fraught with similar problems. We need not reach such issues in this case, however, because we think a super majority verdict of 5-1, when validly accepted from the defendant in accord with the Sanchez requirements, legally constitutes the verdict of a jury and may therefore be accepted by the court. Compare Burch; Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978).

III
Turning to the instant case, we have no trouble in concluding that the defendant did not validly waive his right to a unanimous jury verdict. Although the purported waiver was initiated by the defendant, and the jury had previously informed the court that it was unable to reach a unanimous verdict after having had a reasonable time to deliberate, it is clear that the trial judge did not, as required by Sanchez, explain to the defendant his right to a unanimous jury verdict and the consequences of a waiver of that right. Moreover, the trial judge's abbreviated colloquy with the defendant did not ascertain with certainty, as required by Sanchez, whether the defendant's waiver was being made knowingly and voluntarily because it relied in large part on unstated, off-the-record discussions and agreements involving the defendant, his counsel, and the prosecutor. Plainly, the trial judge must be sensitive to the concern that the defendant might feel pressured by everyone, including his own counsel, into accepting a majority verdict so as to save the state the time and expense of a second trial under the implicit threat of a harsher sentence if he refuses to do so; moreover, a defendant who is in jail awaiting trial, as here, may fear that he will not be tried for a long time if he insists on a mistrial and such fears must be allayed. Finally, because in most cases the defendant has little to gain by such a waiver, the trial judge should be especially cautious in accepting a waiver without fully probing whether the defendant's sole motivation for doing so is the anticipation of a favorable outcome. None of these concerns were addressed by the trial judge in his colloquy with the defendant.[6]
In all fairness to the trial judge, however, it should be noted that this is a case of first impression in Florida and that, accordingly, the trial judge was proceeding entirely in uncharted waters; indeed, the trial judge at the time recognized that "[t]his may be considered by the Supreme Court as a completely illegal procedure" and specifically refused the state's request to secure a waiver from the defendant of his right to appeal on this issue. (T. 289). Nonetheless, given our adoption of the Sanchez requirements, it is clear that the defendant's waiver herein was invalid, and *869 that accordingly a new trial is mandated.[7]
Reversed and remanded.
NOTES
[1] COURT: Mr. Flanning, we're doing a slightly unusual thing in that we  the attorneys  both your attorney and the state attorney  have agreed  because the jury has indicated that they are deadlocked five to one  and they have agreed that we will accept whatever the five juror verdict is as the verdict of the jury.
THE DEFENDANT: Yes, sir.
THE COURT: We will have the jury foreman sign the verdict form, whatever it is, and put right on there that this is a five to one decision for guilty or five to one for not guilty, and they'll sign it.
Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: And, that's going to be the verdict of this case, and you are willing 
You've been told by your attorney the pros and cons and you're willing to accept the verdict?
THE DEFENDANT: Yes, sir.
THE COURT: Okay.
Bring the jury in.
MS. LEVINE [prosecutor]: Just one question. If you could ask of the defendant if he understands this is completely his decision and 
THE COURT: Yes.
Do you understand this is based upon your decision and your decision only?
THE DEFENDANT: Yes, sir.
MS. LEVINE: And, he understands he doesn't have a right to appeal that issue?
MR. PECKINS [defense counsel]: I wouldn't ask you to instruct him 
THE COURT: I can't do that. He can do whatever he wants.
MR. PECKINS: But, for the record I will state that I have not told him one way or another which way to go. I left this up to him.
I've explained both ramifications to him. I told him with a mistrial he'd be tried again, or it would be up to the State to decide.
THE COURT: This may be considered by the Supreme Court as a completely illegal procedure. I think it's legal, but I don't know.
I tried to put in a couple of calls, but didn't get the calls back before this.
I can't require him to give up  this is not a plea  to give up his right to appeal. Bring the jury in."
T.287-89.
[2] Tucker v. State, 559 So.2d 218 (Fla. 1990); Dumas v. State, 439 So.2d 246 (Fla. 3d DCA 1983) (en banc), rev. denied, 462 So.2d 1105 (Fla. 1985); Fla.R.Crim.P. 3.260.
[3] State v. Griffith, 561 So.2d 528 (Fla. 1990) (state agreed not to seek the death penalty in exchange for defendant's agreement to be tried by a six-person jury).
[4] United States v. Chavis, 719 F.2d 46 (2d Cir.1983); United States v. Lopez, 581 F.2d 1338 (9th Cir.1978); United States v. Scalzitti, 578 F.2d 507 (3d Cir.1978); United States v. Gipson, 553 F.2d 453 (5th Cir.1977); Hibdon v. United States, 204 F.2d 834 (6th Cir.1953). But see United States v. Pachay, 711 F.2d 488 (2d Cir.1983) (concurrence discusses possibility of waiver).
[5] Sanchez v. United States, 782 F.2d 928 (11th Cir.1986); Copeland v. State, 241 Ga. 370, 245 S.E.2d 642 (1978); Allen v. State, 77 Md. App. 537, 551 A.2d 156 (1989), cert. denied, 320 Md. 15, 575 A.2d 742 (1990); State v. McKay, 280 Md. 558, 375 A.2d 228 (1977); People v. Miller, 121 Mich. App. 691, 329 N.W.2d 460 (1982); State v. Robinson, 22 Or. App. 340, 539 P.2d 164 (1975) (5-1 verdict); Taylor v. State, 612 P.2d 851 (Wyo. 1980).
[6] Although we think the requirements for a waiver of jury unanimity by the defendant as established in Taylor v. State, 612 P.2d 851 (Wyo. 1980) are too detailed, we nonetheless commend trial judges to consider whether some of these requirements might be appropriate in a given case in determining whether the defendant has knowingly and voluntarily waived his right to a unanimous jury verdict.
[7] In view of our resolution on the jury unanimity issue, the defendant's remaining points on appeal become moot and need not be addressed.